UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIAN WILLIAM WRUBEL,

     Plaintiff,

v.                               Case No:   8:14-cv-2968-T-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff, Brian William Wrubel, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") benefits.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

#### A.  Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B.  Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that he is not undertaking substantial gainful employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments.  *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled.  20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii).  If he meets this burden, he will be considered disabled without consideration of age, education and work experience.  *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work.  *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work.  20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f).  If the claimant can still perform his past relevant work, then he will not be found disabled.  *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.  *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C.  Procedural History

Plaintiff filed applications for a period of disability, DIB, and SSI on August 11, 2010, alleging disability beginning March 11, 2008. (Tr. 151-52, 159-62). Plaintiff's applications were denied initially (Tr. 98-100, 102-04), and upon reconsideration. (Tr. 110-11, 113-14). At Plaintiff's request, an administrative hearing was held before Administrative Law Judge Norman R. Zamboni (the "ALJ") on November 8, 2012. (Tr. 55-84). On December 12, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 35-54). Plaintiff appealed the ALJ's decision and, on May 20, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 10-16). Plaintiff initiated this action by filing a Complaint (Doc. 1) on November 26, 2014.

### D.  Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 11, 2008, the alleged onset date. (Tr. 40). At step two, the ALJ found that Plaintiff had the following severe impairments: hypertension, obesity, bipolar disorder, anxiety, and attention deficit hyperactivity disorder. (Tr. 41). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 41).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant can mentally understand and remember instructions, maintain concentration, pace, and persistence, relate to other individuals, and adapt to work settings sufficiently to perform simple work duties.

(Tr. 42).  At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a certified nursing assistant and instructional designer.  (Tr. 47).  At step five, the ALJ relied upon the Grids to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. 47). The ALJ concluded that Plaintiff has not been under a disability from March 11, 2008, through the date of the decision, December 12, 2012.  (Tr. 48).

## II.    Analysis

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by failing to properly weigh the medical evidence; (2) whether the ALJ erred by failing to properly evaluate Plaintiff's credibility; and (3) whether the ALJ erred by relying on the Grids at step five.  The Court begins with Plaintiff's first issue.

Plaintiff argues that the ALJ erred by giving "little weight" to the opinions of treating psychiatrist Elizabeth Bernardino, M.D., who opined in November 2011 and February 2012 that Plaintiff was unable to work.  (Doc. 16 p. 12).   Plaintiff also argues that the ALJ failed to appropriately consider the opinions from the SSA's own examining consultants, Christopher Bingham, M.D., Steven Abraham, Psy.D., and Robert Coleman, Psy.D.   (Doc. 16 p. 16). Defendant contends that the ALJ properly weighed the opinion evidence and that substantial evidence supports the Commissioner's decision.  (Doc. 18 p. 3).

The Court will begin with the ALJ's treatment of the opinion evidence from Dr. Bernardino. The record indicates that Plaintiff established treatment with Dr. Bernardino after he moved from Florida to Illinois for a period of time, starting in 2008. On December 9, 2008, Plaintiff reported getting anxious and feeling tired easily. (Tr. 364). He also reported a history of mania when he was euphoric and had gone on spending sprees, stayed up for days at a time, and talked about having great ideas in his head. (Tr. 364). Plaintiff was taking Paxil, Adderall, and Clonazepam. (Tr. 365). He exhibited fair insight and judgment. (Tr. 365). Dr. Bernardino diagnosed bipolar disorder, attention deficit hyperactivity disorder, and anxiety disorder. (Tr. 366). Plaintiff's GAF score was 80. (Tr. 366).

On January 12, 2009, Plaintiff reported weight gain from Paxil and that he was unable to take Klonopin due to sedation. (Tr. 362). He continued to have only fair insight and judgment. (Tr. 362). Dr. Bernardino recommended that he slowly decrease his dose of Paxil and start Wellbutrin. (Tr. 363). On March 3, 2009, Dr. Bernardino stated that Plaintiff needed to stop taking Adderall due to high blood pressure. (Tr. 498). He reported possibly moving back to Florida with his grandmother. (Tr. 498).

Plaintiff was not seen again until June 7, 2011. (Tr. 496). He reported moving back to Florida for a couple years, but he had returned to the area because of his ill aunt. Plaintiff reported feeling increasingly depressed over the previous 2 months. He also had decreased energy, and loss of motivation. (Tr. 496). A mental status examination revealed a depressed affect and mood, and fair insight and judgment. (Tr. 497). The doctor stated that he required updated blood testing, but was unable to afford it. His dose of Abilify was increased and his dose of Zoloft was decreased. Xanax was continued. (Tr. 497). At a follow-up on June 28, 2011, Plaintiff reported the adjustment in his medications helped. (Tr. 494).

In a letter dated November 21, 2011, Dr. Bernardino stated that Plaintiff was treated for bipolar disorder, depressed, anxiety disorder, and ADHD, predominately inattentive type. (Tr. 491). Dr. Bernardino opined that Plaintiff has "not been able to keep consistent employment for the last three years because of his psychiatric difficulties." He had a long history of mood instability with an initial episode occurring in 2006. Since then, his episodes of depression had increased in frequency and intensity and he became "unable to perform even rudimentary job functions since 2008." His depression was characterized by erratic sleep and appetite patterns. He stayed in bed most hours of the day and gained weight. He also had poor motivation, low energy, feelings of hopelessness and helplessness, feeling easily overwhelmed, and feeling like a failure. Dr. Bernardino also reported that he had anxiety that made it difficult for him to concentrate and get his work done and ADHD symptoms of poor concentration, distractibility, and difficulty with organization. (Tr. 491).

On December 15, 2011, Plaintiff returned to Dr. Bernardino. (Tr. 493). He described his mood as "stable" and had fair insight and judgment. (Tr. 493). In a letter dated February 17, 2012, Dr. Bernardino reiterated the findings in her earlier opinion. (Tr. 505-506). The doctor stated that Plaintiff remained "unable to perform a full-time work of eight hours a day, five days a week in a normal, competitive setting." (Tr. 506).

Dr. Bernardino completed a Multiple Impairment Questionnaire on February 17, 2012. (Tr. 507-514). Dr. Bernardino diagnosed bipolar disorder, depressed; anxiety disorder, not otherwise specified; and, ADHD, primarily inattentive type. (Tr. 507). Plaintiff's prognosis was guarded. Clinical findings included a history of mood instability with mostly depressive episodes and an episode of mania with feelings of euphoria, impulsivity, and grandiosity. (Tr. 507). His depressive episodes were characterized as loss of motivation to do anything, severe anxiety,

suicidal thoughts, and significant weight gain.  (Tr. 508).  Plaintiff's primary symptoms were depression, feeling down, suicidal ideations, feelings of helplessness or hopelessness, erratic sleep, and periods of mania.  (Tr. 508).  His fatigue was rated as moderately severe, 8 on a 10-point scale. (Tr. 509).  Dr. Bernardino found that Plaintiff could only sit 0-1 hour and stand/walk 0-1 hour in an eight hour day and that it would be necessary or medically recommended for the patient not to sit continuously in a work setting.  (Tr. 509).  Dr. Bernardino opined that Plaintiff's symptoms were frequently severe enough to interfere with attention and concentration.  (Tr. 512).  The psychiatrist found he is not a malingerer.  Plaintiff was found incapable of tolerating even low stress work as he got easily overwhelmed and "shuts down" when his mood is depressed or manic. (Tr. 512).  Plaintiff had good days and bad days.  (Tr. 513).  Dr. Bernardino opined Plaintiff would be absent from work, on the average, more than three times a month due to his impairments or treatment.  (Tr. 513).  She stated that the symptoms and limitations found for Plaintiff were present since 2006.  (Tr. 513).

On August 30, 2012, Plaintiff reported feeling more fatigued. (Tr. 515). He had fair insight and judgment.  (Tr. 515).  Dr. Bernardino refilled his medications.  (Tr. 516).

Dr. Bernardino completed a Psychiatric/Psychological Impairment Questionnaire on January 13, 2014, which was submitted to the Appeals Council.  (Tr. 19-26).  Dr. Bernardino diagnosed bipolar disorder, depressed, anxiety, and ADHD, inattentive type.  (Tr. 19).  His GAF score was 41 to 50 and he was given a guarded prognosis.  (Tr. 19).  Clinical findings included poor memory, appetite disturbance with weight change, sleep disturbance, mood disturbance, social withdrawal or isolation, blunt, flat, or inappropriate affect, decreased energy, anhedonia or pervasive loss of interests, psychomotor agitation or retardation, feelings of guilt/worthlessness, difficulty thinking or concentrating.  (Tr. 20).  Plaintiff's primary symptoms were mood instability

(primarily depression and anxiety), difficulty with concentration and focus, low energy level, problems with memory, erratic sleep pattern, feeling easily overwhelmed, and feelings of hopelessness.  (Tr. 21).  Dr. Bernardino stated that the symptoms and limitations detailed in the questionnaire were present since 2006.  (Tr. 26).

Dr. Bernardino opined Plaintiff was markedly limited (defined as effectively precluded) in the ability to remember locations and work-like procedures; the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain ordinary routine without supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to make simple work related decisions; and, the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 21-23).  He was also markedly limited in the ability to interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel to unfamiliar places or use public transportation; and, the ability to set realistic goals or make plans independently.  (Tr. 23-24).

Dr. Bernardino opined that Plaintiff experienced episodes of deterioration or decompensation in work or work-like settings that caused him to withdraw from that situation and/or experience an exacerbation of signs and symptoms as evidenced by his history of an

inability to keep a job. (Tr. 24). Dr. Bernardino opined Plaintiff was incapable of tolerating even low stress work due to frustration, depression, and anxiety. (Tr. 25). He had good days and bad days. (Tr. 25). The psychiatrist estimated Plaintiff would be absent from work, on the average, more than three times a month due to his impairments or treatment. (Tr. 26).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

If an ALJ concludes that the medical opinion of a treating physician should be given less than substantial or considerable weight, the ALJ must clearly articulate reasons showing "good cause" for discounting it. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).

In this case, to the extent the ALJ accorded "little weight" to the physical limitations opined by Dr. Bernardino, the Court finds that the ALJ's decision was supported by substantial evidence. It was appropriate for the ALJ to note that Dr. Bernardino did not provide any rationale for how Plaintiff's mental impairments imposed physical limitations on Plaintiff's ability to sit, stand, or walk. Plaintiff fails to cite to any medical evidence from the treatment records of Dr. Bernardino or from any other medical source that supports or explains how his mental impairments limited him physically to the extent opined by Dr. Bernardino. Without an explanation, the ALJ was correct to reject Dr. Bernardino's unsupported physical limitation findings.

However, as to Dr. Bernardino's opinion concerning Plaintiff's nonexertional limitations due to his mental impairments, the Court finds the ALJ erred in according Dr. Bernardino's opinion "little weight." In explaining her limitation findings, Dr. Bernardino stated that her opinions were based on Plaintiff's history of mood instability with mostly depressive episodes and an episode of mania with feelings of euphoria, impulsivity, and grandiosity, as well as depressive episodes which were characterized as loss of motivation to do anything, severe anxiety, suicidal thoughts, and significant weight gain. (Tr. 507-08). In rejecting Dr. Bernardino's opinion the ALJ noted that Plaintiff's progress notes indicated normal mental status exam findings. The fact that Plaintiff's mental status exam were at times unremarkable does not provide substantial evidence undermining Dr. Bernardino's opinion. As Plaintiff notes, fluctuations in condition are consistent with disabling bipolar disorder. *See, e.g., Conway v. Colvin*, 2015 WL 5772056, at *4 (M.D. Fla. Sept. 30, 2015) (citing *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) (stating that the United States Court of Appeals for the Seventh Circuit has "often observed that bipolar disorder . . . is by nature episodic and admits regular fluctuations even under proper treatment")). Furthermore, Dr. Bernardino's opinion was not belied by the Global Assessment of Functioning score of 80 Plaintiff was assessed

in December 2008.  (Tr. 366).  The Commissioner has specifically stated that GAF scores are not indicative of any particular severity of mental functioning.  *See Wind v. Barnhart*, 133 F. App'x 684, 692 n. 5 (11th Cir. 2005).  In any event, Plaintiff's record contains other GAF scores that are significantly lower but were not mentioned by the ALJ.  (Tr. 19, 414, 434, 471).  The ALJ failed to show good cause for giving the opinion of Plaintiff's treating physician "little weight."

Likewise, the ALJ erred in his treatment of the opinions from the SSA examining consultants Dr. Bingham, Dr. Coleman, and Dr. Abraham.  Beginning with Dr. Bingham, the record indicates that he evaluated Plaintiff in September 2010.  (Tr. 424).  Plaintiff's physical examination was normal, but Dr. Bingham diagnosed Plaintiff with depression, anxiety, bipolar, OCD, and ADHD.  (Tr. 426).  Dr. Bingham commented that Plaintiff appeared "distant" during the examination and had some poor eye contact, as well as generalized anxiety manifested by fidgety behavior.  (Tr. 426).  Dr. Bingham stated that if Plaintiff conditions were impacting him to the degree exhibited "maintain a job would be difficult for him unless he is able to maintain better control."  (Tr. 426).  While the ALJ discussed Dr. Bingham's findings as to Plaintiff's physical abilities, the ALJ did not discuss Dr. Bingham's opinion as to Plaintiff's mental limitations, or his opinion that Plaintiff's conditions impacted him and would make him unable to maintain a job.  The ALJ's failure to discuss this aspect of Dr. Bingham's opinion was reversible error.

As to the opinion of Dr. Abraham, the record shows that after examining Plaintiff in October 2010, Dr. Abraham opined that Plaintiff's symptoms, "based on client report and clinical observations," appeared to be severely impacting Plaintiff's activities of daily living, vocational performance, and interpersonal interactions.  (Tr. 434).  The ALJ gave little weight to the opinion of Dr. Abraham because "the mental status exam the doctor performed revealed findings not overly debilitating." (Tr. 45).  This conclusory reason for discounting the opinion of Dr. Abraham is not

supported by substantial evidence for the same reason the ALJ erred in evaluating Dr. Bernardino's opinion. Given the fluctuations of Plaintiff's mental impairments, the ALJ must provide greater explanation for rejecting Dr. Abraham's opinion than the mere fact that Plaintiff's mental status was not severe on the exact day he was examined by Dr. Abraham.

Further, the record indicates that Plaintiff was examined by Dr. Coleman in July 2011. After examining Plaintiff, Dr. Coleman also opined that Plaintiff's symptoms, "based on client report and clinical observations," appeared to be severely impacting Plaintiff's activities of daily living, vocational performance, and interpersonal interactions. (Tr. 471). Dr. Coleman further found that Plaintiff's residual abilities for physical and mental work-related activities appeared to be slightly limited, and therefore vocational services were recommended. (Tr. 471-72). Defendant acknowledges in its brief that the ALJ did not expressly weigh Dr. Coleman's opinion. The ALJ's failure to do so was reversible error.

In his decision, after giving little weight to Plaintiff's treating physician and examining physicians, the ALJ indicated that the opinions from non-treating, non-examining state agency psychologists supported his RFC finding:

> Additionally, the mental residual functional capacity in this case is consistent with the mental residual function capacity assessments completed by two separate mental health experts from the State agency. Both doctors reviewed the medical records and function reports submitted in this case and determined the claimant was still capable of the mental demands of unskilled work. In particular, Sharon Ames-Dennard, Ph.D. opined the claimant should understand simple and complex instructions; should be able to retain and retrieve mental data as needed; is capable of attention, concentration, and persisting during completion of simple, routine, tasks; should be capable of appropriate interaction with co-workers, supervisors, and laypersons; and should be able to arrange transportation and respond appropriate to hazards (Exhibit 7F). While Lee Ryback, Psy.D. did not provide a narrative within the mental residual functional capacity assessment, he did note only moderate limitations in some areas (Exhibit 13F).

(Tr. 46).  In essence, the ALJ relied upon the opinions of non-examining, reviewing psychologists to support his RFC finding while according little weight to the opinions of every physician to treat or examine Plaintiff.  The ALJ erred by failing to properly analyze the opinion evidence and, thus, his decision is not supported by substantial evidence.  On remand, the Court will require the ALJ to reconsider the opinion evidence as it relates to Plaintiff's nonexertional limitations and to give appropriate weight to Plaintiff's treating and examining physicians.

As this case is being remanded for the ALJ to reconsider the opinion evidence of record, the Court defers from addressing Plaintiff's other raised arguments.

### III.    Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on March 23, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

- 14 -